

**IT IS ORDERED as set forth below:**

**Date: September 5, 2019**

_____
**Lisa Ritchey Craig**
**U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| JON MICHAEL HAYES SHIBLEY, | ) | CASE NO. 18-68584- LRC |
| *aka* JON M.H. SHIBLEY, | ) | |
| | ) | |
| Debtor. | ) | |

## <u>ORDER DENYING MOTION FOR RECONSIDERATION</u>

Before the Court is the Motion for Reconsideration (Doc. 99, the "Motion"), filed by Jon Michael Hayes Shibley ("Debtor"). CenterState Bank, N.A. ("CSB") opposes the Motion.

## **Procedural History**

Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code[1] (the "Code") on November 5, 2018.   By order entered on November 4, 2019, the Court granted Debtor additional time to file his schedules, statement of financial affairs, and other required documents.  (Doc. 16).  The United States Trustee (the "UST") conducted, continued, and finally concluded the meeting of creditors on February 26, 2019.

On April 8, 2019, the UST filed a motion to dismiss or convert Debtor's case to one under Chapter 7 (Doc. 54, the "Motion to Dismiss or Convert"), asserting that Debtor had: (1) failed to provide proof of insurance for a vehicle; (2) failed to file monthly operating reports ("MOR") for November 2018 through February 2019; and (3) failed to remain current on all administrative expenses including fees due the United States Trustee, pursuant to 28 U.S.C. § 1930(a)(6). The Court held a hearing on the Motion to Dismiss or Convert on May 4, 2019.

At the hearing on the Motion to Dismiss or Convert, counsel for the UST informed the Court that Debtor had provided proof of insurance late on the day prior to the hearing and had filed four months' worth of MORs.  These MORs, however, were insufficient to satisfy the UST that Debtor had complied fully with his obligation to disclose his financial transactions, and Debtor remained

---

[1] Title 11 of the United States Code.

delinquent on the payment of $1,300 in estimated quarterly fees.   Counsel for the UST further expressed frustration with the delays in the case caused by Debtor's failure to produce requested documents, which had necessitated the resetting and continuance of the creditors' meeting.   According to counsel for the UST, Debtor received instructions at the initial debtor interview and the creditors' meeting as to the UST's expectations for financial reporting and the importance of opening and using a debtor-in-possession ("DIP") bank account, rather than dealing in cash or using his business entity's bank account.   Nonetheless, as of April 8, 2019, Debtor had not filed any MORs or paid any UST fees.

The MORs that Debtor filed immediately before the first hearing on the Motion to Dismiss or Convert were deficient.   They contained readily apparent math errors, the ending and beginning numbers for bank account statements did not match, and they did not properly report his portion of the household expenses. The MORs indicated that, at least until the end of February 2019, Debtor had not been using a DIP bank account and had been dealing in cash. The MORs also suggested to the UST that Debtor was administratively insolvent.

In the UST's opinion, Debtor had been evasive and difficult to obtain information from, and Debtor's conduct showed a disregard for the Bankruptcy Rules.   When Debtor requested additional time to file the MORs, counsel for the UST declined to agree, out of concern for the lack of transparency regarding the

source and the amount of Debtor's income and the fact that the case was already

six months old.   This lack of cooperation and information led the UST to request

the conversion of the case to Chapter 7.

In his defense, Debtor's counsel asserted that he had worked with Debtor to

try to fill out the MORs properly and that Debtor had brought a check drawn on

his new DIP bank account to pay the outstanding UST's fees.   He also explained

that Debtor had difficulty opening a DIP bank account because Debtor lacked an

existing relationship with a financial institution.   Debtor's counsel represented

that Debtor would work diligently to amend the deficient MORs and to file the

missing MOR for March 2019.   When asked by the Court what the purpose of

Debtor's Chapter 11 case would be if he were allowed to remain in Chapter 11,

Debtor's counsel responded that Debtor wished to refinance the loan on his home

(the "Property") and that he has only two main creditors (CSB and a judgment

creditor, Mr. Smith).

Counsel for CSB rose in support of the Motion to Dismiss or Convert,

arguing that Debtor had few options in Chapter 11 because the loan secured by the

Property was fully matured and, therefore, could not be restructured through a

Chapter 11 plan.   Counsel for CSB shared the UST's opinion that Debtor had

been very difficult to deal with every step of the way and that Debtor was only

interested in using the bankruptcy case as a means to delay CSB.   Similarly,

counsel for Mr. Smith supported the conversion, but not the dismissal, of the case.

At the conclusion of the first hearing, the Court admonished Debtor regarding the importance of disclosure and agreed with the UST that Debtor had not completed the MORs properly and had not made a good faith effort to obtain a DIP bank account. The Court, however, offered Debtor an additional opportunity to comply, ordering that he tender the check to the UST immediately for the quarterly fees, file the missing March MOR by May 13, 2019, and amend the deficient MORs by May 20, 2019. The Court further ordered that, if the amended MORs were filed, but were still not correct, the UST could reschedule the motion for further hearing.

Although Debtor filed the missing and amended MORs on May 20, 2019, counsel for the UST re-noticed the hearing on the Motion to Dismiss or Convert for June 27, 2019, and, at the request of Debtor's counsel, rescheduled the continued hearing to June 13, 2019. At that time, counsel for the UST informed the Court that, after the first hearing, her office spent considerable time drafting a detailed electronic mail message regarding the deficiencies of the filed MORs, which was sent to Debtor at 3:00 pm on May 10, 2019, but the amended MORs filed on May 20, 2019, did not include corrections in compliance with the detailed instructions provided and continued to contain errors in reporting disbursements. The UST was also concerned with the fact that, although Debtor had represented

that he would be receiving $10,000 in gross salary and $5,000 in distribution income, the MORs did not show that amount of income, Debtor's DIP bank account showed a negative balance as of March, 31, 2019, and the UST could not determine from the MORs where the money Debtor was using to make adequate protection payments to CSB was coming from.   The UST again voiced concerns regarding disclosure and transparency and Debtor's lack of ability to manage his affairs or any real intent to participate fairly in the bankruptcy case.   In the UST's opinion, a trustee would be best suited to sort things out, to see if there are missing cash assets, and to pursue any claims that Debtor has against CSB and others, if they in fact have merit.   Mr. Smith again supported conversion, along with CSB, which reported to the Court that, although Debtor had made two adequate protection payments to CSB under an agreed order, he did so only after notice of default had been sent and only on the last day of the cure period.

Debtor opposed conversion, arguing that he had reached out to the UST for additional guidance on completing the MORs and had not been given adequate assistance.   The UST explained that it is not the UST's practice to walk debtors step by step through how to fill out the form, that the UST's staff offered to answer detailed, discrete questions about the form provided via electronic mail message, and had made every effort to work with Debtor, but Debtor insisted on obtaining general guidance, which the UST's office does not provide.

When asked by the Court to enumerate specific issues with the amended MORs, the UST's counsel explained the deficiencies in great detail. They included: questions left unanswered, missing transactions, lumped expenses (for example, line item for "cash transactions" of $1,700 with no detailed information), failure to complete the required bank account reconciliations, and withdrawals and deposits listed on the bank account statements that did not match the amounts reported in the MORs. When the Court inquired of Debtor's counsel as to why Debtor would have appeared at the first hearing on the Motion to Dismiss or Convert and heard the Court's admonition regarding the importance of accurate financial disclosure, yet file amend reports with the same deficiencies, Debtor's counsel responded that Debtor did the best he could. When the Court noted that the MORs appeared to suggest that Debtor had the ability to break down expenses when he chose to do so, but in some cases, simply chose not to do so, Debtor's counsel responded that Debtor had "struggled." And as to the reporting of Debtor's income, Debtor's counsel acknowledged that Debtor did not accurately report income he received from his business. Nonetheless, at the conclusion of the second hearing on the Motion to Dismiss or Convert, the Court noted that it was not ready to make a final decision on such an important question and that it needed to hear more from the parties, but would need to continue the hearing due to a scheduling conflict. The hearing was eventually continued to

July 22, 2019, by which time CSB had filed a notice of a joinder in support of the Motion to Dismiss or Convert.

At the hearing on July 22, 2019, the UST and CSB renewed their requests for conversion.   The UST asserted that conversion to Chapter 7 would be more appropriate than dismissal of the case because Debtor was claiming that there is significant equity in the Property due to the fact that CSB does not have a valid security interest, and a Chapter 7 trustee could investigate and resolve those issues to give finality to the case.

The UST noted that the deficient MORs had not been amended and that two additional reports had come due (May and June) and were missing up until 9:58 am on the day of the rescheduled hearing, at which time Debtor, acting *pro se*, filed the missing MORs, along with amended schedules, including an amended Schedule J in which Debtor reduced his expenses from $12,400 to $6,451 to reflect the fact that his business pays some of his expenses as compensation.   The UST objected to this amendment on the basis that the schedules are supposed to show expenses paid on Debtor's behalf.   The UST also speculated that the newly filed MORs could not be correct because the other MORs had not been amended, such that the beginning and ending figures for the new reports would be wrong.

CSB supported conversion for the reasons stated by the UST.   CSB also contended that Debtor was acting in bad faith and not cooperating, had taken a

baseless position that CSB does not hold a valid deed to secure debt on the Property, had not paid the property taxes on the Property in years, and lacks the ability to reorganize.   CSB alleged that Debtor was attempting to show that he has money to pay a plan payment by amending his schedules to reduce his expenses, but the expenses appear to be still in the range of $12,000.   Mr. Smith also continued to support conversion, noting that there could be avoidance claims or assets that could be part of the bankruptcy estate, but due to the lack of information provided by Debtor, the parties simply could not know.

Debtor again opposed dismissal or conversion and testified that he believed he could reorganize by obtaining new financing secured by the Property.   He also testified that he had filed an adversary proceeding challenging CSB's lien on the Property and that he filed the bankruptcy case at the suggestion of his nonbankrutpcy attorney to stop the foreclosure long enough to get the issue of CSB's lien resolved.

According to Debtor, his filed May MOR accurately reflects his expenses now that he has removed a $3,000 expense for his children's education.   He eliminated this expense because he does not intend to pay for private school tuition (although on cross examination, he indicated that his children may continue to attend private school, with some other party or relative, paying the bill).   As to his income, he testified that he "purposefully has been barely

working" because Mr. Smith had contacted his customers and asked them questions about the money they were or were not paying to Debtor's business. On cross examination by counsel for the UST he again confirmed that he is paying himself "as little as possible," testified that his business has a $3.1 million balance sheet, and that "it could pay [him] whatever it wants," or Debtor could get a corporate loan from his business. In response to counsel for CSB's statement that he had "been barely working," Debtor responded that it was "by design" and that he is not working more because he is "horrified that the creditors will contact [his] clients." On redirect by his counsel, Debtor testified that he will start showing cash that is available from his business "when [he feels] comfortable that the creditors will not contact [his] customers."

As to his failure to pay the property taxes on the Property, Debtor testified that he thought he could pay them in time before "anything happen[ed]" and that he told his lender that it could pay the taxes if it was worried, or just roll them into the loan. As to his completion of the MORs, the Debtor testified that he went to great lengths to break down his expenses and did his best. On cross examination by counsel for the UST, he was asked why he spent no money in May on food or utilities and testified that his family was in Sweden and he was laid up with back spasms. He also testified that, although his business paid for his insurance, he failed to report the expense or the amount paid as income. When the UST

pointed out expenses appearing in his bank statement, but not reported in the MOR, such as money spent on groceries, Debtor acknowledged that he made a mistake in excluding certain expenses and that this error may have resulted from the fact that he was on medication.

When asked by counsel for CSB whether he had paid the property taxes on the Property, Debtor did not know off the top of his head which years he had paid. He testified that he did not check his mail in May 2019 and, when asked why he had not filed a plan of reorganization eight months into his Chapter 11 case, Debtor responded that he did not know he was supposed to do so.  Debtor testified that he had not made the July adequate protection payment to CSB because he had filed a motion with the Court to stop making the agreed to payments because CSB was "being so contentious" and he did not feel that he should pay an unsecured creditor until the question of its secured status is resolved.  When questioned regarding his failure to "pay bills in May," Debtor answered, "I didn't feel like writing those checks.  It's up to me to pay my bills when I feel like, and I didn't feel like it."  Debtor further could not testify as to whether he has made or is required to make any estimated payments to the Internal Revenue Service.

After hearing the evidence and the closing arguments given by counsel for the UST, CSB, and Debtor, the Court took a recess to consider the UST's request.

Upon returning to the bench, the Court read its ruling into the record:  Having

heard the testimony of [Debtor], as well as arguments from counsel for all

interested parties, I find "cause" to convert the case to Chapter 7, within the

meaning of § 1112(b)(4).  Section 1112(b)(4)(H) [of the Bankruptcy Code]

provides for dismissal or conversion when a debtor does not provide adequate

disclosures or information requested by the UST, and I find that [Debtor] has

simply not complied.  [Debtor] did not file timely, correct, and complete MORs

and has still not amended the MORs that were originally insufficient to enable the

UST and the creditors to understand his financial condition and his transactions.

A Chapter 11 case simply cannot go on when the UST cannot tell what the

debtor's income and expenses are.   There is ample evidence in the record that the

UST's office gave [Debtor] detailed instructions on how to correct the deficiencies

and offered to answer specific questions, but [Debtor] just insisted on being given

generalized feedback on what was wrong with what he filed.  Whether he is not

correcting it because he cannot or will not is not relevant.  Either way, the case

cannot continue in that manner.  This lack of written disclosure is compounded

by the lack of credible testimony by [Debtor] today as to what his income and

expenses truly are.

The Court absolutely agrees with creditor's counsel that [Debtor] is

manipulating his income and expenses to suit his own needs, and that is not

appropriate in Chapter 11 and is in bad faith.  To be a debtor-in-possession, a debtor needs some level of competency and is a fiduciary to the creditors.  Best case here is Debtor is not competent.  If a Chapter 11 debtor is not capable of the basic task of completing an MOR, even with assistance of counsel, that's a problem.  It is a sign that the estate will not be managed properly and that the case either needs a trustee or needs to be dismissed.  Worst case, Debtor is intentionally trying to prevent the UST and creditors from seeing the whole picture and, obviously, that is a serious issue.  A debtor-in-possession is a fiduciary with responsibilities to the creditors over his own self-interest. [Debtor] has demonstrated through his actions and his attitude, including his apparent refusal to follow the advice of his experienced bankruptcy counsel, that he does not appreciate the significance of being a fiduciary to his creditors.  The Court further agrees with the UST and the creditor that a Chapter 7 trustee would be best suited to resolve the acrimonious litigation in this case and that any claims that the estate has against either creditor can be pursued if they are meritorious.

On July 25, 2019, the Court entered an order memorializing its ruling (Doc. 90, the "Order").  Debtor filed the Motion on August 5, 2019.

### Motions to Reconsider

Debtor asks the Court to reconsider the Order.  Rule 9023 of the Federal Rules of Bankruptcy Procedure makes applicable Rule 59 of the Federal Rules of

Civil Procedure applicable to bankruptcy cases.   Although Rule 59(e) permits a court to alter or amend an order or judgment, it "'may not be used to re-litigate old matters or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486, n.5 (2008) (citing 11 C. Wright & A. Miller, Fed. Prac. & Proc. § 2810.1, pp. 127-28 (2nd ed. 1995)).   For this reason, Bankruptcy Local Rule 9023-1 provides that "[m]otions for reconsideration should not be filed as a matter of routine practice." BLR 9023-1 (Bankr. N.D. Ga., eff. Sept. 1, 2019).

To prevail on a motion for reconsideration, the movant must present either newly discovered evidence or establish a manifest error of law or fact.   A 'manifest error' is the "wholesale disregard, misapplication, or failure to recognize controlling precedent."   *Oto v. Metro Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citations omitted).   It is not demonstrated merely because the losing party is disappointed.   *See In re Murff*, 2016 WL 5118280, *2 (Bankr. N.D. Ga. Sept. 16, 2016) (Hagenau, J.).

Here, Debtor points to no newly discovered evidence that could not have been presented by Debtor at one of the many hearings held on the Motion to Dismiss or Convert.   Debtor's sole basis for seeking reconsideration is his contention that the Court did not rely on sufficient evidence to determine that Debtor lacked an ability to reorganize.   The Court did not convert Debtor's case

to Chapter 7 because the Court found that Debtor lacked an ability to reorganize. Rather, the Court converted the case to Chapter 7 because Debtor was not complying with his statutory and fiduciary duties to the bankruptcy estate and to his creditors to fully disclose his financial transactions and to manage the bankruptcy estate for the benefit of all interest parties.

Throughout these proceedings, the Court gave Debtor multiple warnings regarding the importance of and necessity for accurate and clear financial disclosures, yet Debtor continued to report his financial information in the way that best suited his agenda.   Likewise, Debtor's own testimony was sufficient for the Court to determine that Debtor is either incapable or unwilling to manage his financial affairs in a way that will expedite and maximize a return to his creditors. It was, and remains, clear that Debtor's case cannot continue as a Chapter 11.   As Debtor has presented no new arguments or evidence that the Court's original decision to convert the case to Chapter 7 was in manifest error,

**IT IS ORDERED** that Debtor's Motion for Reconsideration is **DENIED**.

<u>**END OF DOCUMENT**</u>

**Distribution List**

ALL PARTIES ON THE ATTACHED MAILING MATRIX

```
Label Matrix for local noticing      Evan M. Altman                    Capital One
113E-1                               Evan M. Altman, Attorney at Law   Attn: Bankrupty
Case 18-68584-lrc                    Building 2                        PO Box 30285
Northern District of Georgia         8325 Dunwoody Place               Salt Lake City, UT 84130-0285
Atlanta                              Atlanta, GA 30350-3307
Thu Sep  5 16:35:50 EDT 2019

Capital One Bank (USA), N.A.         (p)CHOICE RECOVERY INC            Country Club of the South
PO Box 71083                         1550 OLD HENDERSON ROAD           c/o United Mediation Services
Charlotte, NC  28272-1083            STE 100                           6160 Warren Pkwy Suite 100
                                     COLUMBUS OH 43220-3662            Frisco, TX 75034-9415


Daniel Richard Smith                 Daniel Richard Smith             Dept. of Justice-Tax Division
100 Tuxedo Terrace,                  3359 Woodhaven Road, N.W.        Chief Civil Trial  , S Region
Atlanta, GA 30342-4032               Atlanta, GA 30305-1006           POBox14198, BenFranklinStation
                                                                      Washington, DC 20044-4198


(p)GEORGIA DEPARTMENT OF REVENUE     INTERNAL REVENUE SERVICE         INVESTA SERVICES FOR GSRAN-Z, LLC
COMPLIANCE DIVISION                  P O BOX 7346                     1266 WEST PACES FERRY RD, BOX 517
ARCS BANKRUPTCY                      2970 MARKET STREET               ATLANTA, GA 30327-2306
1800 CENTURY BLVD NE SUITE 9100      PHILADELPHIA, PA. 19104-5002
ATLANTA GA 30345-3202

Internal Revenue Service (CIO)       Investa Services, LLC            Leon S. Jones
PO Box 7346                          for Christiana Trst- GSRAN-Z     Jones & Walden, LLC
Philadelphia, PA 19101-7346          1266 W. Paces Ferry Road #517    21 Eighth Street, NE
                                     Atlanta, GA 30327-2306           Atlanta, GA 30309-3909


Lindsay P. S. Kolba                  Lenox Financial Mortgage, LLC    Malin Shibley
Office of the U.S. Trustee           Jon Shibley                      780 Clubside Drive
Suite 362                            780 Clubside Drive               Roswell, GA 30076-5505
75 Ted Turner Drive, S.W.            Roswell, GA 30076-5505
Atlanta, GA 30303-3330


Paul Reece Marr                      Daniel M. McDermott              National Bank of Commerce
Paul Reece Marr, P.C.                United States Trustee            600 Luckie Drive
300 Galleria Parkway, N.W.           362 Richard Russell Bldg.        Birmingham, AL 35223-2452
Suite 960                            75 Ted Turner Drive, S.W.
Atlanta, GA 30339                    Atlanta, GA 30303-3315


National Bank of Commerce            Office of the Attorney General   Edwin K. Palmer
d/b/a Private Bank of Buckhead       State of Georgia                 P.O. Box 1284
c/o Leslie Pineyro                   40 Capital Square, SW            Decatur, GA 30031-1284
21 8th Street NE                     Atlanta, GA 30334-9057
Atlanta, GA 30309-3909


William Russell Patterson Jr.        Leslie M. Pineyro               (c)PRIVATE BANK OF BUCKHEAD
Ragsdale Beals Seigler Patterson & Gray   Jones and Walden, LLC      3565 PIEDMONT ROAD NE
2400 International Tower              21 Eighth Street, NE            3565 PIEDMONT RD NE BLDG 3-210
229 Peachtree Street NE              Atlanta, GA 30309-3909          ATLANTA GA  30305-8207
Atlanta, GA 30303-1635


Regions Bank                         Jon Michael Hayes Shibley        The Gridd, Inc.
P.O. Box 10063                       780 Clubside Drive               Jon Shibley
Birmingham, AL 35202-0063            Roswell, GA 30076-5505           780 Clubside Drive
                                                                      Roswell, GA 30076-5505
```

U.S. Attorney - Civil Division
600 Richard Russell Building
75 Spring Street, SW
Atlanta, GA 30303-3308

United States Attorney
Northern District of Georgia
75 Ted Turner Drive SW, Suite 600
Atlanta GA 30303-3309

United States Trustee
362 Richard B Russell Bldg
75 Ted Turner Drive, SW
Atlanta, GA 30303-3315

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Choice Recovery
1550 Old Henderson Road
Suite 100
Columbus, OH 43220

Georgia Department of Revenue
Compliance Div;ARCS-Bankruptcy
1800 Century Blvd.  #9100
Atlanta, GA 30345-3202

Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).

Private Bank of Buckhead
3565 Piedmont Road NE
Three Piedmont Center
Ste. 210
Atlanta, GA 30305

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)CenterState Bank, N.A.

(u)Daniel Richard Smith

(u)Seth Toporek

End of Label Matrix
Mailable recipients    32
Bypassed recipients     3
Total                  35