**IT IS ORDERED as set forth below:**



**Date: September 24, 2024**

_____
**Lisa Ritchey Craig**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **IN THE MATTER OF:** | : | **BANKRUPTCY CASE NUMBER** |
| | : | |
| JON MICHAEL HAYES SHIBLEY, | : | 18-68584-LRC |
| | : | |
| Debtor. | : | |
| | : | |
| SOUTHSTATE BANK, | : | **CONTESTED MATTER** |
| | : | |
| Movant, | : | |
| | : | |
| v. | : | |
| | : | |
| JON MICHAEL HAYES SHIBLEY, | : | IN PROCEEDINGS UNDER |
| | : | CHAPTER 7 OF THE |
| Respondent. | : | BANKRUPTCY CODE |

## ORDER

SouthState Bank (the "Bank") filed a Motion for Sanctions (the "Rule 9011 Motion," Doc. 347) against Jon Michael Hayes Shibley ("Debtor"), seeking an award of

attorney's fees under Rule 9011 of the Federal Rules of Bankruptcy Procedure because Debtor filed a *Motion for Sanctions* against the Bank (Doc. 340, the "Sanctions Motion"). The Court denied the Sanctions Motion, after finding that the claims raised therein were barred by *res judicata* and had also been released by Debtor. The Bank asserts that Debtor's filing of the Sanctions Motion violated Rule 9011,[1] and Debtor opposes the Rule 9011 Motion.

"Rule [90]11 deters attorneys and litigants from clogging federal courts with frivolous filings. It also rewards litigants who admit their mistakes within a 21-day safe harbor period—and penalizes those who refuse." *Huggins v. Lueder, Larkin & Hunter, LLC*, 39 F.4th 1342, 1344 (11th Cir. 2022). Based on the following findings of fact and conclusions of law, made pursuant to Rule 7052, the Court finds that, to deter future bad conduct, Debtor should be penalized for clogging this Court with a frivolous filing and refusing to withdraw it when given the opportunity.

<u>Background Facts and Procedural History</u>

On November 5, 2018 (the "Petition Date"), Debtor filed a voluntary petition under

---

[1] This matter is a core proceeding, over which this Court has subject matter jurisdiction. 28 U.S.C. § 1334; § 157(b)(2)(A); *In re Virani*, 2017 WL 5564092, at *1 (Bankr. N.D. Ga. Nov. 16, 2017), aff'd sub nom. *Modi v. Goodman*, 2019 WL 13413375 (N.D. Ga. Mar. 7, 2019).

Chapter 11 of the Bankruptcy Code.[2]  On the Petition Date, Debtor owned, with his wife, his residence, commonly known as 770 and 780 Clubside Drive, Roswell, Georgia (the "Property").  The Property was subject to a deed to secure debt held by the Bank (the "DSD").  The Court converted the case to Chapter 7 on July 25, 2019, and Edwin K. Palmer (the "Trustee") was appointed as the Chapter 7 trustee.[3]  On June 13, 2019, Debtor filed a complaint against the Bank and its counsel, among other defendants (the "Adversary Proceeding").  In the Adversary Proceeding, Debtor alleged that the Bank and its counsel forged his signature on certain documents and, therefore, did not have a valid security interest in the Property.  Debtor sought declaratory relief and damages against the Bank and others under multiple theories.  After resolving a significant number of pretrial motions, including Debtor's motion for leave to amend the complaint, and narrowing the issues to the question of whether the DSD was valid, the Court held a trial.  At the conclusion of the

---

[2] The Court takes "judicial notice of the dockets and the content of the documents filed in the case for the purpose of ascertaining the timing and status of events in the case and facts not reasonably in dispute." *In re Ferguson*, 376 B.R. 109, 113 n.4 (Bankr. E.D. Pa. 2007), as amended (Oct. 25, 2007) (citing Fed. R. Evid. 201); *In re Hart*, 2013 WL 693013, at *1 n.2 (Bankr. D. Idaho Feb. 26, 2013) ("Pursuant to Fed. R. Evid. 201, the Court takes judicial notice of its own dockets."); *Thomas v. Alcon Labs.*, 116 F. Supp.3d 1361 (N.D. Ga. 2013) (citing *Serpentfoot v. Rome City Comm'n*, 322 F. App'x 801, 807 (11th Cir. 2009)).  Further, the "Court is permitted to take judicial notice of the cases included in the Movant's Motion for Sanctions despite the fact that a majority of those cases did not take place in front of this Court."  *In re Marietta City Gramling St. Land Tr.*, 2014 WL 6460684, at *6 (Bankr. N.D. Ga. Oct. 21, 2014).
[3] Debtor appealed the Court's order converting the case, but the appeal was dismissed for want of prosecution.  *See* Docs. 133, 155.

3

trial, the Court found that Debtor failed to carry his burden of proof and entered judgment in favor of the Bank.  *See* Adv. Pro. 19-05229, Doc. 124 (Nov. 4, 2022).

In the bankruptcy case, the Trustee filed a report of no distribution and a notice of abandonment as to the Property. Doc. 238.  Accordingly, in August 2021, the Property was abandoned to Debtor.  *See* 11 U.S.C. § 554.  After having resolved the Adversary Proceeding, the Court also terminated the automatic stay in favor of the Bank to permit it to exercise its state law rights with regard to the Property.  Doc. 248 (the "Order Lifting Stay").  Debtor appealed the Order Lifting Stay to the District Court on November 18, 2022 (Doc. 252), and it was affirmed on June 1, 2023 (Doc. 329).

Beginning in April 2023, Debtor's wife, Malin Shibley ("Ms. Shibley"), filed three, successive voluntary petitions for relief under Chapter 13 of the Bankruptcy Code, all of which were dismissed without the confirmation of a Chapter 13 plan.  Case Nos. 23-53987-LRC; 23-57184-LRC (the "Second Chapter 13 Case"); and 23-60825-LRC (the "Third Chapter 13 Case").  These Chapter 13 cases triggered an automatic stay and/or a co-debtor stay that further protected the Property from the Bank's attempts to foreclose the DSD.  In the Second Chapter 13 Case, Ms. Shibley also filed a complaint attacking the DSD in a manner similar to the suit filed by Debtor.  Adversary Proceeding No. 23-05151 (the "Ms.

Shibley Adversary").  At the same time, Ms. Shibley filed a quiet title action in the District Court for the Northern District of Georgia to prevent the Bank from foreclosing on the Property.  Case No. 23-cv-03315, Malin Shibley v. SouthState Bank (the "Ms. Shibley District Court Action").[4]

In the Third Chapter 13 Case, Ms. Shibley filed a motion to impose a stay to protect the Property because, pursuant to § 362(c)(4), the automatic stay did not arise upon the filing of the bankruptcy petition, and the Bank sought relief from the co-debtor stay provided by § 1301.  The Court held a hearing on both motions on November 6, 2023.  Ms. Shibley, Debtor, and the Bank appeared and announced the terms of a settlement agreement on the record, and the Court entered an Order (Third Chapter 13 Case, Doc. 24) providing that: (1) the automatic stay did not go into effect in the Third Chapter 13 Case; (2) the co-debtor stay, pursuant to § 1301 was terminated as to the Bank and the Property; (3) in the event Debtor, Ms. Shibley, or the Property is the subject of any bankruptcy case, no automatic stay or co-debtor stay shall apply as to the Bank or the Property; and (4) Debtor, Ms. Shibley, and the Bank were authorized to enter into a settlement agreement (the

---

[4] On November 1, 2023, the day before Ms. Shibley filed the Third Chapter 13 Case, the District Court granted summary judgment in favor of the Bank on all counts in the Ms. Shibley District Court Action. (Ms. Shibley District Court Action, Doc. 22).

"Settlement Agreement," Rule 9011 Motion, Exh. A).  On November 7, 2023, Debtor, Ms. Shibley, and the Bank entered into the Settlement Agreement.  In the Settlement Agreement, Debtor agreed to the amount of the debt owed to the Bank that was secured by the Property, as of October 18, 2023, plus an agreed per diem thereafter; agreed that the loan documents were valid; and released all his claims against the Bank and its agents and attorneys.  The Bank agreed to accept a reduced payoff of $1,018,000 (the "Settlement Amount") on or by 2:00 pm EST on December 29, 2023.

Under the Settlement Agreement, the Bank's agreement to accept a reduced payoff would be null and void if payment was not received timely, in which case, Debtor acknowledged that the Bank would be entitled to foreclose the DSD in January 2024. Debtor specifically agreed that the Bank had the right to foreclose its interest in the Property under its loan documents and that he would not interfere with the foreclosure if he did not pay timely.  On November 28, 2023, Ms. Shibley filed Plaintiff's Notice of Dismissal with Prejudice (Ms. Shibley Adversary, Doc. 7), to which the Bank filed a Special Appearance and Notice of No Opposition to Plaintiff's Notice of Dismissal with Prejudice (Ms. Shibley Adversary, Doc. 8).  On December 14, 2023, the Court entered an Order dismissing the Ms. Shibley Adversary with prejudice.  (Ms. Shibley Adversary, Doc. 9).

Debtor failed to pay the Settlement Amount by December 29, 2023, and the Bank was advertising the Property for foreclosure. On the advertised foreclosure date—January 2, 2024—the Bank, Ms. Shibley, and Debtor entered into a Modification to Settlement Agreement that extended the Settlement Payment Deadline to January 31, 2024, to allow Debtor and Ms. Shibley to sell the Property. Debtor once again acknowledged the amount of the debt owed to Bank and released all claims asserted or assertable against the Bank. *See* Rule 9011 Motion, Exh. B.

On January 26, 2024, Shibley filed a number of pleadings in the Superior Court of Fulton County, Georgia, including a Complaint for Deceptive Trade Practices, a Motion for Permanent Injunction preventing the Bank from foreclosing on the Property; and a Request for Temporary Restraining Order to prevent the Bank from foreclosing on the Property and initiating three separate cases pursuant to the various pleadings, all of which the Bank removed to the District Court. *See* Case Number 24-CV-00436-WMR; Case Number 24-CV-00437-WMR; Case Number 24-CV-00493-WMR (the "2024 District Court Cases"). In the 2024 District Court Cases, Debtor specifically alleged that the Bank knowingly "collected Tax Escrow, rolled them into the loan, but did not pay the property taxes," and made "multiple motions to remove the stay" that were grounded in fraud and

false statements, and misrepresentations." Case No. 24-cv-00439-WMR, Doc. 1, at 8–9. On February 5, 2024, Shibley and Ms. Shibley closed the sale of the Property and paid the Bank the Settlement Amount. The same day, Shibley signed a Notice of Dismissal with Prejudice for each of the 2024 District Court Cases, and these were filed with the District Court on February 6, 2024, dismissing the 2024 District Court Cases with Prejudice.

In the Sanctions Motion, filed on March 29, 2024, Debtor asserted claims against the Bank for inappropriately adding amounts for property taxes to its debt balance when, in fact, the Bank had not advanced those funds, and Debtor eventually paid the amounts when he sold the Property. The Bank filed a response on May 8, 2024, denying Debtor's allegations and raising the defenses of release and *res judicata*. Doc. 348. The Court agreed with the Bank and dismissed the Sanctions Motion on both grounds asserted by the Bank. (Doc. 352, the "Dismissal Order").

According to the Rule 9011 Motion, the Bank has "incurred substantial attorney fees and costs in the numerous, duplicative and frivolous legal matters involving" Debtor. In particular, the Bank contends that the Sanctions Motion "is another attempt to ignore the prior settlements, rulings and voluntary dismissals with prejudice and harass [the Bank] with no valid basis in fact or law." The Bank argues that the "claims, defenses, and other

8

legal contentions set forth in [the Sanctions Motion] have no legal basis and are not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law in violation of Rule 9011(b)(2)" and that Debtor filed the Sanctions Motion in bad faith for the improper purpose of harassing the Bank.[5]  In response, Debtor does not address the Bank's arguments or even discuss the elements of Rule 9011.  He simply repeats the arguments made in the Sanctions Motion, argues that he had a right to raise his issues with the Bank's conduct, and disparages the Bank and the Court.

<u>Applicable Legal Standards</u>

"Rule 9011 imposes the baseline of conduct required of those who submit papers to the Court." *Matter of Goolsby*, 2017 WL 2312853, at *2 (Bankr. N.D. Ga. May 26, 2017). By submitting a paper to the Court, an attorney or an unrepresented person certifies that, to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) the paper is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of

---

[5]  The Bank also submits that the Sanctions Motion violated Rule 9011(b)(3).  Because the Court finds sufficient basis under Rule 9011(b)(1) and (b)(2) to impose sanctions against Debtor, the Court will not address whether the Sanctions Motion violated Rule 9011(b)(3).

litigation; and (2) the claims, defenses, and other legal contentions in the paper are warranted by existing law or by nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.  Fed. R. Bankr. P. 9011(b).  "If any of those terms are violated, a court may impose sanctions 'upon the attorneys, law firms, or parties that have violated [the Rule] or are responsible for the violation.'" *Goolsby*, 2017 WL 2312853 at *2 (quoting Fed. R. Bankr. P. 9011(c)).[6]  Accordingly, "[s]anctions under Bankruptcy Rule 9011 are warranted when (1) the papers are frivolous, legally unreasonable or without factual foundation, or (2) the pleading is filed in bad faith or for an improper purpose." *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1572 (11th Cir. 1995).[7]

The burden of proof is on the party seeking sanctions.  *See In re Marietta City Gramling St. Land Tr.*, 2014 WL 6460684, at *5 (Bankr. N.D. Ga. Oct. 21, 2014) (citing *In re Weaver,* 307 B.R. 834 (Bankr. S.D. Miss. 2002)).  "Once a prima facie case has been

---

[6] Under Rule 9011, a movant must follow specific procedures.  First, a Rule 9011 motion "shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate [the Rule]." Fed. R. Bankr. P. 9011(c)(1)(A).  Second, "[t]he motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper...is not withdrawn or appropriately corrected." *Id.*  This provides a "safe harbor" for parties, and a court cannot grant a motion for sanctions under Rule 9011 if a party does not comply with the safe harbor provision. *See Rucker v. Conseco Fin. Servicing Corp. (In re Rucker),* 278 B.R. 262, 266 (Bankr. M.D. Ga. 2001).  Here, the Court finds that the Rule 9011 Motion complies with these two requirements.

[7] "In deciding cases based on violations of Rule 9011, courts may look to cases that interpret Federal Rule of Civil Procedure 11." *In re Coastal Care Res., L.L.C.*, 2004 WL 5848053, at *6 (Bankr. N.D. Ga. Feb. 17, 2004) (citing *Valley Nat'l Bank of Ariz. v. Needler (In re Grantham Bros.)*, 922 F.2d 1438, 1441 (9th Cir. 1991); *In re Weiss,* 111 F.3d 1159, 1170 (4th Cir. 1997)).

made, the burden shifts to the party from whom the sanction is sought to show a legitimate purpose for the filing." *Id*. (citing *In re King*, 83 B.R. 843, 847 (Bankr. M.D. Ga. 1998)). The fact that a party is unrepresented is not a defense to a Rule 9011 motion, as "'Rule 9011 does not exempt pro se litigants from its operation; a pro se litigant has the same duties under Rule 9011 as an attorney.'" *In re Coastal Care Res., L.L.C.*, 2004 WL 5848053, at *9 (Bankr. N.D. Ga. Feb. 17, 2004) (quoting *In re Weiss*, 111 F.3d 1159, 1170 (4th Cir. 1997)); *see also In re Jones*, 632 B.R. 138, 147 (Bankr. S.D. Ohio 2021); *In re Woodruff*, 610 B.R. 707, 712–13 (Bankr. M.D. Ga. 2019) (imposing sanctions including attorney's fees upon findings that *pro se* debtor violated Rule 9011(b)(2)). The Court, however, "must take into account the plaintiff's *pro se* status when determining whether the filing was reasonable." *Thomas v. Evans*, 880 F.2d 1235, 1240 (11th Cir. 1989).

As to Rule 9011(b)(1), the "improper purpose clause," is "directed at abusive litigation practices and encompasses papers filed to cause unnecessary delay, to increase litigation costs, or filed to harass." *In re Ryan*, 411 B.R. 609, 615 (Bankr. N.D. Ill. 2009). The focus is on *why* the nonmovant filed the pleading at issue. *Am. Telecom Corp. v. Siemens Info. & Commc'ns Network, Inc.*, 2005 WL 5705113, at *4 (N.D. Ill. Sept. 7, 2005). To "determine whether a paper was interposed for any improper purpose, a court must look

to 'objectively ascertainable circumstances that support an inference' that the non-movant's purpose for filing a paper was improper . . . ." *Id.* (noting that a "'paper interposed for any improper purpose is sanctionable whether or not it is supported by the facts and the law, and no matter how careful the pre-filing investigation'"); *see also In re Whitlow,* 2001 WL 34048136, at *3 (Bankr. E.D. Va. Nov. 20, 2001) ("A signatory's purpose is derived from the objective evidence surrounding the litigation."); *In re Am. Telecom Corp.*, 319 B.R. 857, 872 (Bankr. N.D. Ill. 2004) ("Rule 9011(b) prohibits the filing of a pleading for an improper motive or reason such as delay, harassment, or causing expense, even if the filing relates to a claim that is otherwise colorable or supported by some evidence and legal authority.").

As to Rule 9011(b)(2), "when a motion for sanctions under Rule 9011 is presented before the Court, it must inquire whether the attorney would have 'been aware that it was frivolous if [he] had conducted a reasonable inquiry.'" *In re Robertson*, 2024 WL 3738155, at *7 (Bankr. N.D. Ga. Aug. 8, 2024) (quoting *In re Mroz*, 65 F.3d at 1573); *see also Boone v. JP Morgan Chase Bank*, 447 F. App'x 961, 965 (11th Cir. 2011) (stating that "Rule 11 does 'not require a showing of subjective bad faith. . .[, as the] bad faith element is determined by objective standards of reasonableness'") (citing *Patterson v. Aiken*, 841 F.2d

386, 387 (11th Cir.1988)). "[S]anctions are appropriate if a pleading is not warranted by existing law or a good faith argument for the extension or modification, or reversal of existing law," and a legal position is unwarranted "if it has no chance of success under controlling precedent." *Jones*, 632 B.R. at 147.

Such is the case where a party asserts a claim that has already been fully litigated. *See In re Lane*, 2018 WL 4210234, at *3–4 (Bankr. W.D. Ky. Sept. 4, 2018), *aff'd*, 604 B.R. 23 (B.A.P. 6th Cir. 2019) (imposing sanctions against *pro se* creditors for filing a second adversary proceeding on issues that had already been fully litigated, appealed or otherwise waived, as that "amount[ed] to frivolous and/or vexatious litigation tactics that had only an improper purpose and amount to an abuse of the bankruptcy process"); *Tipp v. JPMC Specialty Mortg., LLC*, 2022 WL 423401, at *9 (S.D. Ala. Jan. 3, 2022), *aff'd sub nom*. 2023 WL 8369968 (11th Cir. Dec. 4, 2023) (stating "[e]ven a party proceeding pro se should know that repackaging [and repeating] grievances addressed in prior cases is not legally tenable," and finding a sufficient basis to impose Rule 9011 sanctions); *Grappell v. Carvalho*, 2021 WL 5178750, at *9 (S.D. Fla. Nov. 8, 2021) (imposing sanctions on *pro se* litigant because, had she "conducted a reasonable inquiry into her claims, she would have known they were frivolous," where "based on Plaintiff's numerous filings with the Court,

it [was] abundantly clear that Plaintiff can understand case law and legal authority . . . [and] despite clear warning by the [defendants] that she [was] relitigating claims that have already been decided against her and affirmed on appeal, Plaintiff elected to proceed"); *Taylor v. Gaither*, 2001 WL 435873, at *2–3 (S.D. Ala. Mar. 22, 2001), *aff'd*, 273 F.3d 1116 (11th Cir. 2001) (imposing Rule 9011 sanctions on a *pro se* litigant where a reasonable litigant would have had no doubt that the claims lacked a legal basis and, "even were the standard of reasonableness not objective," the pleadings in the case showed "considerable effort and research, indicating" that plaintiff was "a motivated and capable litigant" that would have known his claims would fail); *see also Thomas v. Evans*, 880 F.2d 1235 (11th Cir. 1989); *Patterson v. Aiken*, 841 F.2d 386 (11th Cir. 1988); *Edwards v. Best Buy Co.*, 2021 WL 4399562, at *6 (D.D.C. Sept. 27, 2021), *aff'd*, 2022 WL 566484 (D.C. Cir. Feb. 22, 2022) (stating that the plaintiff "should have realized that bringing the same claims yet again, . . . is improper and amounts to harassment"). However, "'the court's inquiry should only focus on the merits of the pleading gleaned from the facts and law known or available . . . at the time of filing.'" *In re Sanchez*, 2021 WL 726079, at *3 (Bankr. N.D. Ga. Feb. 24, 2021).

Further, if a violation is found, the nature of the sanction is within the Court's discretion. Rule 9011 itself states that any sanction "shall be limited to what is sufficient

14

to deter repetition of such conduct or comparable conduct by others similarly situated."
Fed. R. Bankr. P. 9011(c)(2). Courts rely on sanctions that may include nonmonetary relief,
such as dismissal of the claim, as well as monetary sanctions such as "'an order to pay a
penalty into court" or "an order directing payment to the movant of part or all of the
reasonable attorney's fees and other expenses directly resulting from the violation.'"
*Campbell v. High Tech Rail & Fence, LLC*, 2020 WL 13526696, at *11 (N.D. Ga. Nov. 17,
2020). To choose the appropriate sanction, the Court may consider a variety of factors,
including the procedural posture of the case, the amount needed to deter similar activity by
other litigants, the nature of the litigation, and the ability of the sanctioned party to pay. "In
choosing a sanction, 'the least severe sanction [that is] adequate to serve the purpose should
be imposed.'" *In re Modi*, 2023 WL 3561394, at *3 (Bankr. N.D. Ga. May 22, 2023),
reconsideration denied, 2023 WL 3909470 (Bankr. N.D. Ga. June 8, 2023); *see also In re
Miles*, 2012 WL 5336125, at *2 (Bankr. N.D. Ga. Sept. 20, 2012) ("The rule was not
intended to award prevailing parties compensation for costs; it was intended to deter
litigation abuse.").

<u>Analysis</u>

It is clear to the Court that Debtor violated Rule 9011(b)(2) and (b)(1) when he filed

15

the Sanctions Motion.  The Court, along with the Bank and its counsel, has dealt with litigation regarding the Property and the Bank's interest in it for six, long years.  The Court draws upon this experience to inform its opinions of Debtor as a *pro se* litigant and his knowledge and ability to make decisions regarding the propriety of filing and pursuing the Sanctions Motion.  Debtor has shown that he is a "motivated and capable litigant" and no stranger to conducting legal research and filing lengthy pleadings and briefs.

In short, the Court finds that no reasonable person with Debtor's education, professional experience,[8] and litigation history would believe that he could legitimately file the Sanctions Motion after having pursued and dismissed with prejudice the exact same claim in the 2024 District Court Actions as part of his negotiations to get the Bank to forebear and to accept less than the amount of its debt.  And if there were any doubt that a layperson with Debtor's characteristics would realize the impact of dismissing a claim with prejudice, Debtor also previously released all claims against the Bank as part of his settlement, making it a certainty that Debtor understood the impact of his actions.  He negotiated a settlement with the Bank to buy himself more time to sell the Property and

---

[8] *See* Adversary Proceeding, Doc. 1, at 10 n.3 (describing himself as a "Title industry expert" having "successfully overseen over 70,000 real estate transactions").

16

avoid a foreclosure.  The terms of the deal he signed with the Bank were specific and clear enough that a nonlawyer would understand that the entire point of the settlement was for the Bank to receive payment on its debt and for both parties to obtain finality as to the excruciatingly drawn-out business relationship between them.  The timeline of events in this case also dispels any possibility that Debtor did not know about the existence of his claim regarding the property taxes when he dismissed the 2024 District Court Actions, which, by the way, he had also filed in clear violation of his promises under the Settlement Agreement when he thought he would not be able to pay the Settlement Amount in time to avoid foreclosure.  For the reasons stated in the Dismissal Order, the Sanctions Motion had no legal basis and, therefore, had no possibility of being granted.  The Court has no difficulty finding that Debtor, even as a non-attorney, knew that and filed it anyway.  If he had really been innocently unaware that his claim was barred and released when he filed the Sanctions Motion, he surely would not have ignored the Bank's request that he withdraw it or the Bank's warning that his conduct was sanctionable under Rule 9011.  Rather, the fact that he did nothing when the Bank served its motion upon him is further proof that he intended to engage in conduct that violated Rule 9011(b)(2).

As to whether Debtor filed the Sanctions Motion in bad faith and for an improper

17

purpose, the Court found above that Debtor knew the Sanctions Motion had no legal basis when he filed it and when he refused to withdraw it, and his response does not even attempt to provide a legitimate reason for doing so. Based on Debtor's prior conduct in this case and in the Adversary Proceeding, the Court is left with the firm conviction that Debtor filed the Sanctions Motion in bad faith and out of spite to harass the Bank and its counsel and to increase the Bank's costs. Throughout these proceedings Debtor has demonstrated clearly that he does not like to lose or to be told what to do. He has hurled accusations of criminal misconduct and professional incompetence at the Bank and its counsel for six years and even threatened that the Bank and its attorneys could be criminally prosecuted for their fraudulent conduct.[9] He has demeaned and belittled the Bank's counsel at every turn and demanded $25 million in compensatory, plus punitive damages and penalties from the Bank.[10] Debtor's conduct throughout this case makes manifest the disdain he has for the

---

[9] *See* Transcript of Rescheduled Hearing Held July 22, 2019 Regarding Motion to Dismiss or Convert Case-Testimony of Debtor, at 101 (stating he "[f]iled the bankruptcy because my attorney . . . did not think that in a non-judicial state like Georgia that I could stop the bank's egregious action of trying to foreclose without a security deed, with a forged security deed"); *see also* Debtor's *Second Amended Motion Opposing the Movant's Motion, and Request for Postponement of the Hearing to a Later Date*, Doc. 201 at 21-22 (stating that the Bank's counsel is a "liar and has committed malpractice and slander several times," accusing her of forging documents and lying to the Court, and suggesting that Debtor has alerted the U.S. Department of Justice to the possibility of her fraudulent activities); Adversary Proceeding, Doc. 39, ¶ 8 (stating that "they will have to testify and will most likely go to jail").
[10] *See* Adversary Proceeding, Doc. 39 ¶ 1 (accusing the Bank and its counsel of "6 new acts" against Debtor); *id*. ¶ 7 (describing the Bank's conduct as a "very sneaky, sleazy, slimy attempt to create a false narrative").

18

Bank and its counsel. "His failure to withdraw the [Sanctions Motion] after he received the unfiled motion for sanctions against him, which explained in thorough detail why those pleadings crossed the Rule 9011 line, further supports the finding that [any] claim of good faith is a fabrication." *In re Coastal Care Res., L.L.C.*, 2004 WL 5848053, at *9 (Bankr. N.D. Ga. Feb. 17, 2004). Debtor knew that the Sanctions Motion was frivolous and, in filing it, he acted deliberately. He had no legitimate purpose in filing it and no legal excuse for doing so. "He acted maliciously and in bad faith in an effort to injure" the Bank in violation of Rule 9011(b)(1). *Id.*

As to the appropriate sanction to impose, the Bank seeks payment of its attorney's fees in dealing with the Sanctions Motion. "Generally, Rule [9011] allows a court to award the prevailing party 'reasonable expenses, including attorney's fees, incurred for the motion.'" *High Heart Media, Ltd. v. Brainjuice Media, LLC*, 2021 WL 9349174, at *16 (N.D. Ga. Mar. 11, 2021) (citing *Patterson v. Aiken*, 111 F.R.D. 354, 356 (N.D. Ga. 1986) ("In ordinary cases where there has been a violation of Rule 11, the most appropriate sanction to effectuate the deterrence goal is a one-for-one cost-shift of reasonable fees incurred as a result of the violation of Rule 11.")). Given the fact that the Court has already denied the Sanctions Motion, other types of sanctions, such as striking or dismissing the

19

offending pleading, are not available.   Debtor has not directly challenged the type of sanction or provided any argument as to why a grant of attorney's fees would be more than necessary to deter him from refiling barred and released claims against the Bank in the future.   Therefore, the Court finds the appropriate sanction is an award of the Bank's reasonable attorney's fees incurred in responding to the Sanctions Motion.

<u>Conclusion</u>

For the reasons stated above,

IT IS ORDERED that the Rule 9011 Motion is GRANTED;

IT IS FURTHER ORDERED that the Bank is DIRECTED to file, within fourteen (14) days from the date of this Order, affidavits and a memorandum of law to support an explanation of the attorney's fees as specified herein.   Debtor may have fourteen (14) days from the date of the Bank's submission to object to the reasonableness of the fees requested, and, if Debtor objects, the Bank shall have fourteen (14) days to file a reply.   Upon consideration of all timely submissions, the Court will determine the appropriate amount of sanctions to be imposed on Debtor.

**END OF DOCUMENT**

**Distribution List**

20

Jon Michael Hayes Shibley
177 Lake Laurel Dr
Dahlonega, GA 30533

Leslie M. Pineyro
699 Piedmont Ave, NE
Atlanta, GA 30308

Edwin K. Palmer
P.O. Box 1284
Decatur, GA 30031

William Russell Patterson, Jr.
Ragsdale Beals Seigler Patterson & Gray
2400 International Tower
229 Peachtree Street NE
Atlanta, GA 30303-1629